### TENNESSEE GAS PIPELINE COMPANY, LLC, Petitioner

v.

**William S. PAUL, in his official capacity as Director of Health of the Metro Public Health Department of the Metropolitan Government of Nashville and Davidson County, Tennessee, et al., Respondents**

**No. 17-1048**
**September Term, 2016**

United States Court of Appeals, District of Columbia Circuit.

Filed On: June 29, 2017

**4**

Brian Dennis O'Neill, Attorney, Michael Diamond, Michael R. Pincus, Van Ness Feldman LLP, Washington, DC, for Petitioner

Paul Jefferson Campbell, II, Attorney, James Lawerence Charles, Joshua Craig Lee, Esquire, Metropolitan Department of Law, Nashville, TN, Peter J. Hopkins, Esquire, Tillman Lowry Lay, Esquire, Spiegel & McDiarmid LLP, Washington, DC, for Respondents

Before: Tatel, Brown and Griffith, Circuit Judges.

### JUDGMENT

PER CURIAM

This petition was considered on the record compiled by the parties and on the parties' briefs. *See* Fed. R. App. P. 34(a)(2); D.C. Cir. R. 34(j). The Court has accorded the issues full consideration and has determined that they do not warrant a published opinion. *See* D.C. Cir. R. 36(d). For the reasons stated below, it is

**ORDERED AND ADJUDGED** that the petition for review be **GRANTED** and that the matter be remanded to the Public Health Department of the Metropolitan Government of Nashville and Davidson County, Tennessee.

Petitioner Tennessee Gas Pipeline Company is in the midst of constructing a natural gas pipeline that will run from the Gulf of Mexico to the Northeast United States. Part of the project requires Tennessee Gas to build a compressor station in Joelton, Tennessee, a small community on the outskirts of Nashville. In January 2015, the Company filed an application with the Metropolitan Government of Nashville's Public Health Department seeking various Clean Air Act permits that Tennessee Gas must obtain to build the compressor station. The Act delegates to state and local governments the responsibility to ensure compliance with certain pollution-control requirements, *see* 42 U.S.C. § 7661a, and requires them to "approve or disapprove a completed application . . ., and . . . issue or deny the permit, within 18 months after the date of receipt thereof," *id.* § 7661b(c).

After some two years passed—and having received no final decision on its application—Tennessee Gas filed a petition for review under the Natural Gas Act, 15 U.S.C. §§ 717, *et seq.*, which gives this court "original and exclusive jurisdiction over any civil action for the review of an alleged failure to act by a . . . State administrative agency acting pursuant to Federal law to issue, condition, or deny any permit required under Federal law," *id.* § 717r(d)(2). If a local permitting authority fails to comply with a "schedule . . . established by Federal law," 18 C.F.R. § 157.22, and if such failure inhibits development of interstate natural-gas facilities, 15 U.S.C. § 717r(d)(2), the statute directs this court to "remand the proceeding to the [local permitting authority] to take appropriate action" and to "set a reasonable schedule and deadline for the agency to act on remand," *id.* § 717r(d)(3); *see Dominion Transmission, Inc. v. Summers*, 723 F.3d 238, 245 (D.C. Cir. 2013) ("Because the Department's failure to act to grant, condition, or deny Dominion's air quality permit was inconsistent with federal law, we grant Dominion's petition and remand for further action.").

Tennessee Gas insists that the relevant deadline for Nashville's Public Health Department to act is not the 18-month deadline contained in the Clean Air Act but rather a shorter deadline set by a Federal Energy Regulatory Commission regulation, which requires permitting authorities to take action on a permit application "no later than 90 days after [FERC] issues its

final environmental [review] document." 18 C.F.R. § 157.22. But the regulation also provides that this 90-day deadline is displaced where "a schedule is otherwise established by Federal law." *Id.* Here, the Clean Air Act's 18-month deadline is just such a schedule, meaning that it governs in place of the 90-day clock set by FERC's regulation. *See Millennium Pipeline Co. v. Seggos*, 860 F.3d 696, 702 (D.C. Cir. 2017) (concluding that the Clean Water Act's one-year deadline is a schedule "otherwise established by Federal law" under 18 C.F.R. § 157.22).

Even under the more generous timeframe provided in the Clean Air Act, however, Nashville's Public Health Department failed to timely act on Tennessee Gas's permit application. The Company submitted its application in late January 2015, and the Department had until early August 2016 to "approve or disapprove" the application by "issu[ing] or deny[ing] the permit." 42 U.S.C. § 7661b(c). That deadline has come and gone, and Tennessee Gas remains unable to break ground on its compressor station.

The Department argues that the Clean Air Act's 18-month countdown did not start in January 2015 because Tennessee Gas failed to include in its application an analysis of Reasonably Available Control Technology (RACT). That omission, the Department contends, tolled the starting of the 18-month clock, which begins to run only upon the filing of a *"completed* application," *id.* (emphasis added), and the absence of a RACT analysis rendered Tennessee Gas's application incomplete. This argument fails for two independent reasons.

First, Nashville's pollution-control regulations enumerate the necessary elements of a complete application, and a RACT analysis is not one of them. *See* Nashville Metro Health Department, Pollution Con-

trol Division (PCD) Regulation No. 13-3(b)(1), (e). Although the regulations require some permit applicants to submit a "RACT proposal," nothing in them specify when such proposal is due or demand its inclusion in an initial application. *See* PCD Regulation No. 14-3.

Second, Nashville's regulations require the Department to deem an application complete if the Director of Public Health fails to timely notify an applicant of any deficiencies in its initial application—something the Department concedes it never did. *See* PCD Regulation No. 13-3(b)(2) ("The Director must make a determination within sixty (60) days of receipt of application that an application is complete. Upon failure of the Director to make this determination the said application shall be deemed complete."); *see also id.* No. 13-5(a)(4) (same). Nashville argues that Tennessee Gas "waived any reliance upon that provision" because "[i]t did not—and does not—seek to have the Department approve its [January 2015] Application as filed"— that is, without a RACT proposal. Respondent's Br. 19–20. But Nashville's regulations do not require a "deemed complete" application to be perfect; to the contrary, they provide that "[i]f while processing an application that has been deemed to be complete, it is determined that additional information is necessary to evaluate or take final action, the Director may request such information in writing and set a reasonable deadline for a response." PCD Regulation No. 13-3(b)(2); *see also id.* No. 13-3(d)(3) (same).

Because the Department failed to timely act on Tennessee Gas's permit application, we grant Tennessee Gas's petition and remand for further action. It is

**FURTHER ORDERED,** on the court's own motion, that the parties submit within 10 days of the date of this judgment a proposed schedule for action on remand.

The parties are strongly urged to submit a joint proposal. The parties' submissions may not exceed 10 pages.

Pursuant to D.C. Circuit Rule 36, this disposition will not be published.